PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BYRON SANTOS,

        Plaintiff,

    v.

OFFICER JONES, SERGEANT D.
FILIGHERA, SERGEANT HESSEL,
OFFICERS JOHN DOE #1-25, NURSE
SOLOMON, SUPERINTENDENT
LATONA, FIRST DEP. KELLY,
LIEUTENANT JOHN DOE, ORC
PARKER, ORC SMITH, ORC FISHER,
ORC SUPERVISOR NUE, PREA
DEPUTY ADAMS, GRIEVANCE
OFFICER BECKER,

        Defendants.

_____

**DECISION AND ORDER**

22-CV-6338-EAW

## <u>INTRODUCTION</u>

*Pro se* plaintiff Byron Santos ("Plaintiff") is incarcerated at Attica Correctional Facility ("Attica") in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). He commenced this action pursuant to 42 U.S.C. § 1983 asserting claims that arose while he was incarcerated at Collins Correctional Facility ("Collins"). (Dkt. 1). The Court construed the complaint as seeking damages against Collins employees for retaliating against him, denying him access to the courts, assaulting and raping him, failing to protect him, and denying him medical care. (Dkt. 27 at 7-18).

The Court granted Plaintiff's motion to proceed *in forma pauperis*, screened the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and dismissed the

complaint with leave to amend.  (*See generally id.*).  Specifically, the Court dismissed Plaintiff's inadequate medical care claim with leave to amend because he did not plausibly allege the deliberate indifference of any individual.  (*Id.* at 9-12).  The Court dismissed Plaintiff's claims of retaliation with leave to amend because his allegations were conclusory and he failed to plausibly allege a causal connection between his alleged protected conduct and the alleged retaliatory conduct.  (*Id.*).  Plaintiff's access to courts claim did not include sufficient information to state a claim on which relief could be granted, and the Court dismissed it with leave to amend.  (*Id.* at 12-13).  The sexual assault claim also lacked specific facts sufficient to plausibly allege the claim, and this claim was dismissed with leave to amend.  (*Id.* at 13-16).  Noting that Plaintiff's allegations indicated he may have been attempting to assert a failure to protect or failure to intervene claim, the Court set forth the elements required to plausibly allege such claims and granted Plaintiff leave to amend.  (*Id.* at 17-18).

All claims for money damages against the defendants named in the complaint in their official capacities were dismissed as barred by the Eleventh Amendment.  (*Id.* at 18-19).  Plaintiff's motions to amend the caption (Dkt. 18; Dkt. 23) and motions for separation orders (Dkt. 6; Dkt. 7) were denied as moot.  Plaintiff's motions for prejudgment remedies and for appointment of counsel (Dkt. 20; Dkt. 24) were denied without prejudice as premature.

Plaintiff timely filed an amended complaint (Dkt. 28), which the Court now reviews pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  Plaintiff has again filed motions for relief under Fed. R. Civ. P. 64, for discovery, and for appointment of counsel.  (Dkt. 30; Dkt. 31; Dkt. 34).  In his amended complaint Plaintiff has sued Sergeant D. Filighera

("Filighera"), Officers John Doe #1-25 ("John Doe Officer Defendants"), Officer Jones ("Jones"), and Lt. John Doe ("Lt. Doe") for being involved in the assault and rape of Plaintiff that allegedly took place on or about April 28, 2022.  (Dkt. 28 at 18-19).  Plaintiff has sued Superintendent Latona ("Latona"), Dep. Kelly ("Kelly"), Offender Rehabilitation Coordinator ("ORC") Parker ("Parker"), ORC Smith ("Smith"), ORC Fisher ("Fisher"), ORC Supervisor Nue ("Nue"), Dep. Adams ("Adams"), and Grievance Officer Becker ("Becker") for failing "to take disciplinary or other action to curb the known pattern of physical abuse" by Filighera, the John Doe Officer Defendants, Jones, and Lt. Doe.  (*Id.* at 19).  Plaintiff has sued Nurse Solomon ("Solomon") and Sgt. Hessel ("Hessel") (collectively with Filighera, the John Doe Officer Defendants, Jones, Lt. Doe, Latona, Kelly, Parker, Smith, Fisher, Nue, Adams, and Becker "Defendants") for denying Plaintiff medical attention for his wounds that were sustained during the alleged assaults and has sued Solomon for negligent medical care under state law.  (*Id.*).  Plaintiff did not replead an access to courts claims in the amended complaint.  (*See id.* at 1-3).  Plaintiff does not appear to replead a retaliation claim.  (*See id.*).  However, he describes conduct by Solomon, Filighera, Hessel, and Jones as retaliatory.  (*See id.* at 4, 8, 15, 16, 17-18).

Construing the facts alleged in the complaint as asserting a retaliation claim, these claims are insufficiently pleaded, and the retaliation claims against Filighera, Hessel, and Jones are dismissed with prejudice, and the retaliation claim and state law claim against Solomon are dismissed without prejudice.  Plaintiff's claims against Filighera, certain John Doe Officer Defendants, and Lt. Doe for excessive force and sexual assault may proceed to service, as may the claim for deliberate indifference against Hessel.  Plaintiff's claims against any officials in their official capacities are dismissed as barred by the Eleventh

Amendment.   All other claims are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Plaintiff's motions for relief under Fed. R. Civ. P. 64, for discovery, and for appointment of counsel (Dkt. 30; Dkt. 31; Dkt. 34) are denied without prejudice.

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The Court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the Court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  *Abbas*, 480 F.3d at 639 (internal quotation marks omitted).  But leave to amend pleadings may be denied when any amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## I.   THE AMENDED COMPLAINT

In evaluating a complaint, the Court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008) (discussing pleading standard in *pro se* cases after *Twombly*: "even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

## A. Plaintiff's Allegations

In April 2019, while incarcerated at Collins, Plaintiff filed several complaints and grievances regarding Jones's conduct. (Dkt. 28 at 3-4). The first grievance complained of Jones grabbing his own genitals in Plaintiff's presence, throwing Plaintiff's clothes, making kissing faces at Plaintiff, and denying Plaintiff meals. (*Id.* at 3). The second grievance reported that Jones showed Plaintiff a page from a pornographic magazine and said, "this is how I am going to have you." (*Id.* at 4). The third grievance related that Jones had propositioned Plaintiff for sexual intercourse by offering a "headphone extension" in exchange. (*Id.*). Plaintiff filed a fourth grievance naming both Jones and Hessel when Hessel (then Officer Hessel) wrote false misbehavior reports against Plaintiff. (*Id.*). Soon after Plaintiff filed the fourth grievance, Jones appeared at Plaintiff's cell and begged him to stop writing grievances. (*Id.*). Plaintiff told Jones to "stop sending his co-worker friends at [him]." (*Id.*). Jones told Plaintiff that "they were not going to stop even if [Jones] said anything." (*Id.*). Plaintiff replied, "they are retaliating because of

5

you[,] if you don't stop it[,] I will just write a complaint/grievance because you know it is retaliation." (*Id.*).  "Jones replied by saying he will see what he can do[, but] [t]hey never stopped."  (*Id.*).  Shortly thereafter, Plaintiff was transferred to Southport Correctional Facility ("Southport").  (*Id.*).  While at Southport, Plaintiff filed a civil rights complaint against Jones, which alleged violations of Plaintiff's First and Eighth Amendment rights to be free of retaliation and sexual harassment, and his Fourteenth Amendment right to equal protection.  (*Id.*); *see Santos v. Jones*, 1:19-cv-01042-EAW.  Plaintiff alleges the case was dismissed for "reasons unknown."[1]  (Dkt. 28 at 4).

Plaintiff returned to Collins at the end of March 2022.  (*Id.*).  Upon Plaintiff's arrival, a John Doe Officer Defendant said to Plaintiff, "[you're] back[,] this is going to be fun." (*Id.*).  Plaintiff was assigned to a two-man cell with a bunkmate.  (*Id.* at 5).  Plaintiff alleges that shortly after he settled in, Jones walked past his cell, then doubled back.  (*Id.*).  Jones looked in the cell, smiled, and then left—as he walked away, he said "payback."  (*Id.*). Plaintiff called out to Jones that he did not want any problems.  (*Id.*).  Jones replied, "that's what you said last time[,] I get you now."  (*Id.*).  Before the end of April 2022, Plaintiff's cell had been searched five times.  (*Id.* at 5-8).

After the first cell search Plaintiff spoke with someone in mental health and explained Plaintiff's history with Jones.  (*Id.* at 5).  That person told Plaintiff "to speak with

---

[1]     The Court's records show that the Court dismissed the action on October 7, 2020, after Plaintiff failed to file an amended complaint.  *See Santos v. Jones*, 1:19-cv-01042-EAW (Dkt. 8; Dkt. 9).  Rule 201 of the Federal Rules of Evidence provides that a court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Such judicial notice includes the Court's "own records" and "records of other cases in the same court."  *Ira S. Bushey & Sons, Inc. v. W. E. Hedger Transp. Corp.*, 167 F.2d 9, 12, 12 n.2 (2d Cir. 1948).

ORC." (*Id.*).  Plaintiff spoke with Parker, explaining the situation with Jones and telling Parker that he did not feel safe.  (*Id.*).  Parker told Plaintiff he was not on her caseload and that Plaintiff had to speak to his assigned ORC.  (*Id.*)  Plaintiff next spoke with Becker who told Plaintiff to write everything down and send it to him so he could "look into" the matter.  (*Id.* at 6).  Plaintiff did so.  (*Id.*).  Plaintiff then told Fisher that he wanted to file a complaint pursuant to the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301-30309; Fisher said that she would not file a complaint because it was not her job.  (*Id.*).  Plaintiff spoke with Filighera about "filing a separation on [Jones.]"  (*Id.*).  However, "Filighera said nothing and walked away."  (*Id.*).  Plaintiff next explained the situation with Jones to Smith.  (*Id.*).  Plaintiff told Smith, Plaintiff's ORC, that Plaintiff wanted to file a PREA complaint and request a separation order, but Smith said she did not have the power to do either of those.  (*Id.*).  Plaintiff next spoke with Nue about his concerns, and Nue said he would "look into the matter."  (*Id.*).  Plaintiff wrote to Latona, Kelly, and Adams, explaining that he feared for his life due to "the past and present situations" with Jones.  (*Id.* at 7).  Plaintiff next told his history with Jones to Lt. Doe.  (*Id.*).  Plaintiff included details such as the comment—"this is going to be fun"— (*id.* at 4), the litany of grievances he had filed, his belief that Jones was conducting cell searches in retaliation for those grievances, his concern for his safety, and his desire for a separation from Jones, (*id.* at 7).  Lt. Doe said he would "look into the matter."  (*Id.*)

Four searches of Plaintiff and his bunkmate's cell were conducted without incident.  (*Id.* at 6-8).  A fifth cell search occurred at approximately 3:00 p.m. on or about April 28, 2022.  (*Id.* at 8).  Per the usual procedure, Plaintiff was handcuffed, he stepped out of his cell, and was pat frisked.  (*Id.*).  Although Jones typically conducted the cell searches, this

time Filighera conducted this search with two other corrections officers whom Plaintiff identifies as "(2) Defend[a]nts Officer John Doe[.]" (*Id.*). In addition to being pat frisked, Plaintiff was scanned with a handheld metal detector. (*Id.*). The metal detector sounded in the course of the search, Plaintiff became distressed, and he asked for mental health assistance. (*Id.*). Even though a John Doe officer stated that the handcuffs—holding Plaintiff's hands behind his back—were setting off the device, Filighera summoned other John Doe Officer Defendants and ordered them to drop Plaintiff to the floor. (*Id.*). The John Doe Officer Defendants grabbed Plaintiff by his hair and neck, put him in a headlock, slammed him to the floor—where he hit his head—kicked him, and placed a knee on the back of his neck. (*Id.*). The John Doe Officer Defendants shackled Plaintiff's legs and he was carried to the first-floor bull pen and thrown on the floor. (*Id.*). There he requested medical attention and mental health assistance. (*Id.*).

At approximately 3:30 p.m., Solomon arrived and asked Plaintiff if he was okay. (*Id.* at 9). Plaintiff responded that he was not okay, that he needed medical attention, but before he received care, he wanted to see the patient bill of rights. (*Id.*). Solomon left, ostensibly to get a copy of the patient bill of rights. (*Id.*). When she returned approximately one-half hour later, she did not have a hardcopy but said she could verbally tell him what his rights were. (*Id.* at 9-10). Plaintiff asked if she knew the patient bill of rights word for word and Solomon did not respond. (*Id.* at 10). When Plaintiff again asked both for medical care and a copy of the patient bill of rights, Solomon looked at Filighera, who said "don't give him the patient bill of rights." (*Id.*). Solomon and Filighera both walked away. (*Id.*).

At approximately 4:30 p.m., Lt. Doe arrived at the bull pen and spoke briefly with Filighera. (*Id.*). Lt. Doe then asked Plaintiff what happened. (*Id.*). Plaintiff told Lt. Doe that he had been assaulted while in restraints, he had not received medical attention, and mental health had not yet been to see him. (*Id.*). Plaintiff then said to Lt. Doe that five cell searches in less than a month must be illegal, especially when there was no reason to conduct the searches. (*Id.*). Plaintiff then asked to speak to the chaplain. (*Id.*). Lt. Doe left the area for approximately twenty minutes. (*Id.*). When he returned, Plaintiff told him that he had still not received medical care or mental health assistance, nor had he seen the chaplain. (*Id.*). Plaintiff then commented, "you guys are corrupt as fuck." (*Id.*). Lt. Doe asked Plaintiff why he was screaming. (*Id.*). Plaintiff responded that he was not screaming, he was speaking loudly so the microphones would pick up and record what was being said. (*Id.*). Lt. Doe walked away again, then returned with the John Doe Officer Defendants. (*Id.*).

Seeing that the John Doe Officer Defendants were dressed in black and wearing gas masks, Plaintiff turned his back against the bull pen door, raised his hands and started screaming that he was not resisting. (*Id.*). The John Doe Officer Defendants sprayed Plaintiff four or five times with "bear spray," hit him with a shield, and knocked him to the floor. (*Id.* at 10-11). The John Doe Officer Defendants handcuffed Plaintiff's hands behind his back, pinned him on his stomach by kneeling on his arms and "stomping" on his ankles, stripped him naked and ripped his religious beads off, spread his buttocks, and inserted a finger inside his rectum. (*Id.* at 11). When the John Doe Officer Defendants finished, they carried him back to his cell and put him on contraband watch. (*Id.*).

9

At approximately 5:30 p.m., Plaintiff asked the inmate in the cell next to his to call Plaintiff's girlfriend.  (*Id.*).  Plaintiff asked the inmate to explain to Plaintiff's girlfriend that DOCCS employees were trying to kill him, that they had not given him medical attention or documented his injuries, and that he was feeling suicidal.  (*Id.*).  At approximately 6:00 p.m., Plaintiff told the contraband watch officer that he was feeling suicidal; the officer responded that "Filighera already knew."  (*Id.*).

At approximately 6:30 p.m. Plaintiff heard Filighera call for Plaintiff's cell door to be opened.  (*Id.* at 11).  Plaintiff alleges that when the door opened, Filighera ordered the John Doe Officer Defendants to assault Plaintiff.  (*Id.* at 11-12).  Plaintiff tried to run to the back of the cell but was slammed to the floor.  (*Id.* at 12).  Plaintiff screamed and cried for help while the John Doe Officer Defendants cuffed his hands behind his back, punched, kicked, and stomped him and again inserted a finger inside his rectum.  (*Id.*).  The next day, while still on contraband watch, Plaintiff asked Hessel for medical attention; Hessel responded, "you can fucking die[;] don't ask me for anything."  (*Id.*).

In May 2022, Hessel pulled Plaintiff from his cell and verbally reprimanded him because Plaintiff's girlfriend and his attorney were demanding that DOCCS provide Plaintiff medical attention and document his injuries.  (*Id.*).  Later, a doctor did document Plaintiff's injuries[2] but could not do a rape kit because too many days had passed.  (*Id.*).  Also in May 2022, Plaintiff made PREA complaints to non-parties from the medical and mental health departments, and to Parker, Fisher, Latona, and Kelly.  (*Id.* at 13).  With

---

[2]     "[K]nots on [his] head, black eye, scrapes, bruises, swelling on [his] feet, legs, hands, arms, face, and back and neck pain."  (Dkt. 28 at 12).

the exception of the medical and mental health staff, they all denied Plaintiff's requests to send his PREA complaint.  (*Id.*).

Later in May 2022, non-party Ms. Hensley from the Office of Special Investigations interviewed Plaintiff regarding his PREA allegations.  (*Id.*).  During the interview, Plaintiff asked for a separation order from "all [his] abusers."  (*Id.*).  Ms. Hensley told him to keep his head down and that she would get back to him, but she never did.  (*Id.*).  In July or August, Plaintiff went on a hunger strike to try to get a separation order or to be transferred, but when the hunger strike did not accomplish either, he stopped.  (*Id.* at 14).

In August 2022, Plaintiff started feeling suicidal.  (*Id.*).  He was put on suicide and contraband watch for several days and then transferred to Attica.  (*Id.*).  Even though he explained to Attica mental health staff the reasons for his suicidal ideation—namely, the assaults, the PREA complaints, feeling that no one at Collins would help him, Attica transferred him back to Collins.  (*Id.*).  Plaintiff refused to go back, and on the day of his transfer, an Attica officer denied Plaintiff his breakfast and lunch.  (*Id.*).  When doing so, the officer asked if Plaintiff knew Hessel, and if so, to let him know that "Red" sends his regards.  (*Id.*).  Back at Collins, Plaintiff began to believe that the staff were going to kill him, so he requested a § 1983 complaint form from the district court and wrote complaints to Latona and Adams, describing the interaction with "Red" at Collins and again requesting a separation order.  (*Id.*).

Later in August Plaintiff had two interactions with Jones, one in which Jones said, "Santos wants me to leave him alone[,] like if I care about his grievances."  (*Id.* at 15).  In the second interaction, Jones went to Plaintiff's cell with a complaint that Plaintiff had written and said, "if I did anything, I would like to say sorry."  (*Id.*).  Plaintiff responded that

it was too late for an apology and all he wanted was to be left alone and that every one of Jones's "friends" were "fucking with" Plaintiff because of Jones. (*Id.*). Jones responded that he could not control what others did and "whatever they do, they do alone not because of me." (*Id.*). Jones continued, trying to talk Plaintiff out of writing more complaints against him, but Plaintiff told Jones to leave him alone and Jones eventually walked away. (*Id.*).

Also in August 2022, John Doe Officer Defendants picked Plaintiff up from his cell to escort him to a classroom and asked him, "what's going on with you and Jonsey?" (*Id.* at 15). Plaintiff responded, "you all do not understand that I want you to leave me alone . . . what you are doing is violating rules, regulations and procedures, most importantly my constitutional rights; I will see all of you in court!" (*Id.*). One of the John Doe Officer Defendants replied, "that court shit don't affect us[;] it won't matter[;] you won't win." (*Id.*). In August 2022, Plaintiff also spoke with his program management team. (*Id.* at 16). Present at the team meeting were: Filighera, Smith, Parker, and non-party mental health and medical staff Ms. Jones and Ms. Nelis. (*Id.*). Plaintiff alleges that Smith, Parker, and Filighera verbally abused him because of "different types of views and opinion[s,]" and Plaintiff returned to his cell and wrote a complaint. (*Id.*). Kelly investigated the complaint and when Kelly asked Plaintiff about what happened, Plaintiff stated only that "everything's on camera and audio." (*Id.*).

In or about September 2022, Solomon stopped by Plaintiff's cell to give him his medication and noticed he was using a law library tablet. (*Id.*). Instead of believing Plaintiff when he said, "they give them out at 6:00 a.m. sometimes," she reported him to an Officer Doe Defendant, who told someone else that Solomon wanted Plaintiff's cell

searched. (*Id.*). Plaintiff sent a grievance to Becker and Latona. (*Id.*). Days later, a non-party medical staff member appeared at Plaintiff's cell and said that "her boss asked her to come talk to [Plaintiff] about the complaint he filed on . . . Solomon." (*Id.*). Plaintiff replied, "your boss sent you how unprofessional tell your boss to check the camera and audio and they will see for themselves." (*Id.*). Plaintiff filed a grievance about this interaction as well. (*Id.*).

Also in or about September 2022, Filighera came to Plaintiff's cell to escort Plaintiff to a classroom, and upon collecting him, Filighera pointed to a blood stain on Filighera's shirt. (*Id.*). Plaintiff understood this as an attempt to intimidate him because Plaintiff had filed grievances against him. (*Id.*). Plaintiff filed a grievance about this as well. (*Id.* at 17).

Also in or about September 2022, Plaintiff spoke with Latona "to see if she [had] been receiving [his] complaints." (*Id.*). She answered, "how can I miss them you file [nine] a day." (*Id.*). She also said that Plaintiff's complaints would be investigated and when the investigations were complete, he would get a response. (*Id.*). Latona moved on to speak to someone in another cell and Filighera stepped up to Plaintiff's cell and started making "kissing faces" at Plaintiff. (*Id.*). Plaintiff called out to Latona telling her, "he's making kissing faces at me." (*Id.*). Latona responded by asking Plaintiff to not interrupt and telling him to ignore Filighera. (*Id.*).

In October 2022, Filighera and Plaintiff had several more run-ins, including Filighera making kissing faces at Plaintiff, denying Plaintiff programming, mocking Plaintiff for filing complaints about "gang assaults and rapes," and writing a misbehavior report about Plaintiff refusing double cell placement, which the hearing officer concluded "did

not happen." (*Id.* at 17-18).  Plaintiff grieved Filighera's conduct and also filed grievances

that month "about [his] food and mail being tampered with" and "being denied law library

research on multiple days in retaliation for filing past and present complaints/grievances."

(*Id.*).

## II.    SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the

challenged conduct (1) was attributable to a person acting under color of state law, and

(2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or

laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997)

(citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself

creates no substantive rights; it provides only a procedure for redress for the deprivation

of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing

*City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that

individual's personal involvement in the alleged constitutional violation; it is not enough to

assert that the defendant is a link in the chain of command.  *See McKenna v. Wright*, 386

F.3d 432, 437 (2d Cir. 2004).  Moreover, the theory of *respondeat superior* is not available

in a § 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  "[T]here

is no special rule for supervisory liability [under § 1983].  Instead, a plaintiff must plead

and prove that each Government-official defendant, through the official's own individual

actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir.

2020) (internal quotation marks and citation omitted).

III.     **PLAINTIFF'S CLAIMS**

   **A. Excessive Force and Sexual Assault**

The Eighth Amendment prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate.  To state an excessive force claim under the Eighth Amendment, a prisoner must allege "that the defendant acted with a subjectively sufficiently culpable state of mind" and "that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions."  *Bradshaw v. City of N.Y.*, 855 F. App'x 6, 9 (2d Cir. 2021) (summary order) (quoting *Harris v. Miller*, 818 F.3d 49, 63, 64 (2d Cir. 2016)).  The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (reiterating that district courts must "decide excessive force claims based on the nature of the force rather than the extent of the injury").

The Supreme Court has "held repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'"  *Estelle*, 429 U.S. at 102 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).  With respect to sexual misconduct, "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment."  *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) (citing *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997)).

Plaintiff alleges that on April 28, 2022, during searches of Plaintiff's cell, Filighera and Lt. Doe summoned the John Doe Officer Defendants and ordered them to drop Plaintiff to the floor.  (Dkt. 28 at 8).  Plaintiff alleges that the John Doe Officer Defendants grabbed Plaintiff by his hair and neck, put him in a headlock, slammed him to the floor, kicked him, placed a knee on the back of his neck, sprayed him with "bear spray," hit him with a shield, kneeled on his arms and stomping on his ankles, stripped him naked, spread his buttocks, and, on two separate occasions—at approximately 3:30 p.m. and 6:30 p.m.—inserted a finger inside his rectum.  (*Id.* at 10).  Plaintiff alleges that there was no reason for Defendants to suspect that he was in possession of contraband, and he alleges that he did not resist corrections officers.  (*Id.*).  These allegations are sufficient at this early stage to allege Eighth Amendment violations of excessive force and sexual assault, warranting service and a response from Filighera, Lt. Doe, and the John Doe Officer Defendants (once identified).  Because Plaintiff does not allege Jones's personal involvement in any of the assaults, *Tangreti*, 983 F.3d at 618, this claim is dismissed as to Jones.

### B. Failure to Protect

A failure to protect or failure to intervene claim brought under the Eighth Amendment turns on analysis of two factors.  First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Second, the inmate must show that the official demonstrated deliberate indifference to the inmate's safety.  *Id.*  Deliberate indifference can be plausibly alleged with facts that show that the official knew of and disregarded an excessive risk to the inmate's health or safety; "the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  In the failure to intervene context, "[a]n officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene." *Rosen v. City of N.Y.*, 667 F. Supp. 2d 355, 360 (S.D.N.Y. 2009).

Plaintiff contends that Latona, Kelly, Parker, Smith, Fisher, Nue, Adams, and Becker failed to intervene when they did not "take disciplinary or other action to curb the known pattern of physical abuse" by Filighera, the John Doe Officer Defendants, Jones, and Lt. Doe.  (Dkt. 28 at 19).  Plaintiff's amended complaint makes clear that he made many complaints and grievances orally and in writing.  (*Id.* at 3-18).  Plaintiff alleges that he "fear[ed] for [his] life due to the complaints/grievances [he] filed on . . . Jones." (*Id.* at 6).  As alleged, no complaints or grievances lodged before the alleged physical and sexual assaults that occurred April 28, 2022, indicate specifically why Plaintiff feared for his life as he alleges.  (*Id.*).  Although Plaintiff alleges that he attempted to convey the nature of his concerns regarding Jones to Filighera, Fisher, Becker, Smith, Nue, Latona, Kelly, and Adams, these Defendants were either not in a position to file a grievance or they did not follow up with Plaintiff to complete the grievance process that Plaintiff requested.  (*Id.* at 6-7).

In 2019, Plaintiff submitted a grievance regarding alleged unwanted verbal sexual comments and advances by Jones (*id.* at 3-4) as well as Hessel's filing of "fake misbehavior reports" (*id.* at 4).  In April 2022, Plaintiff relayed the 2019 interactions with Jones to mental health staff, Parker, Becker, Fisher, Filighera, Smith, Nue, Latona, and Adams, telling them that he "feared for [his] life" because of the interactions with Jones in

2019 and asking for a "separation" from him.  (*Id.* at 5-7).  Plaintiff does not allege facts from which the Court can discern what, if anything, from the 2019 interactions caused Plaintiff to fear for his life in 2022.  There are no allegations in the amended complaint showing that Jones continued to make inappropriate sexualized comments after Plaintiff submitted grievances about that conduct in 2019.  Instead, Plaintiff alleges that Jones apologized to Plaintiff in 2022.  (*Id.* at 15 ("if I did anything, I would like to say sorry.")).  The only complaints Plaintiff makes about Jones in 2022 are that Jones once muttered, "payback" and that he searched Plaintiff's cell four times without incident.  (*Id.* at 5, 6-8).

Plaintiff also does not allege that any of the grievances filed prior to April 28, 2022, indicated that Filighera, Lt. Doe, or the John Doe Officer Defendants posed a substantial risk of serious harm to Plaintiff.  Thus, the amended complaint does not plausibly allege facts from which the Court could reasonably infer that Parker, Becker, Fisher, Filighera, Smith, Nue, Latona, or Adams knew of and disregarded an excessive risk to Plaintiff's safety posed by Jones, Filighera, Lt. Doe, or any John Doe Officer Defendant.  Accordingly, this claim is dismissed. Because the Court previously apprised Plaintiff of the elements required to allege a failure to intervene or failure to protect claim (Dkt. 27 at 17), dismissal is with prejudice.

### C. Deliberate Indifference

An Eighth Amendment claim of deliberate indifference rises to the level of a constitutional violation only where the facts alleged show that the defendant was deliberately indifferent to the plaintiff's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  The first prong, a serious medical need, "exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and

wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted)).   The second, or subjective prong, exists when "the official charged with deliberate indifference . . . act[ed] with a sufficiently culpable state of mind." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks and citations omitted).   That is, an "official must know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Even assuming, for purposes of initial screening, that Plaintiff has alleged a serious medical need, *see Linden v. Westchester Cnty.*, No. 93 CIV. 8373 (MBM), 1995 WL 686742, at *3 (S.D.N.Y. Nov. 20, 1995) (cuts, bruises, and pain caused by altercation with a corrections officer sufficient to allege serious medical need), Plaintiff has not set forth any facts suggesting that Solomon knew of and disregarded an excessive risk to Plaintiff's health or safety.   Plaintiff alleges that Solomon offered medical assistance but Plaintiff refused, asking first to receive a hardcopy of the patient bill of rights.   (Dkt. 28 at 9-10). When Solomon offered to verbally tell Plaintiff his rights, Plaintiff refused, insisting that he receive a hardcopy of the patient bill of rights before he would consent to treatment.   (*Id.*). These allegations do not indicate that Solomon knew of and disregarded a serious medical need.   Therefore, this claim is dismissed with prejudice.   Because Plaintiff's Eighth Amendment claim against Solomon is insufficient to proceed to service, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the claim Plaintiff asserts against Solomon under New York state law.   Accordingly, this claim is dismissed without prejudice.   *See Christy v. Warden of Rikers Island*, No. 19 CIV. 9666 (JPC), 2022 WL 3716268, at *4 (S.D.N.Y. Aug. 29, 2022) ("[E]ven if the Second Amended

Complaint could reasonably be construed as asserting a state law medical malpractice claim, the Court declines to exercise supplemental jurisdiction over any pendant state law claims now that the Court has dismissed [the plaintiff's] remaining federal claim against [the doctor defendant].").

However, assuming for screening purposes that Plaintiff has alleged a serious medical need, Plaintiff has alleged that Hessel was deliberately indifferent to his medical need.  On or about April 19, 2022, Hessel was conducting a morning cell block tour.  (Dkt. 28 at 12).  As Hessel approached the contraband watch logbook, Plaintiff requested medical assistance from Hessel.  (*Id.* at 12).  Hessel responded, "you can fucking die[;] don't ask me for anything;" Hessel then walked out of the B-2 gallery where Plaintiff was housed.  (*Id.*),

Plaintiff also alleges that he was not seen by a doctor until several days after the alleged assault.  (*Id.*).  A delay in the delivery of medical care does not automatically trigger constitutional protections.  *Cf. Snyder v. Alam*, No. 15 CV 4033 (VB), 2016 WL 2642226, at *3 (S.D.N.Y. May 6, 2016).  However, "a plaintiff may show delayed medical care warrants constitutional protection by alleging the delay worsened his condition or increased the risk of future injury."  *Id.*  Although Plaintiff has not alleged that any delay caused by Hessel worsened his condition or increased the risk of future injury, the allegations set forth in the amended complaint are at least sufficient for the Court to draw an inference, as is required at this stage, that Hessel was deliberately indifferent to Plaintiff's serious medical need such that a response is warranted.

### D. Retaliation

The Court previously dismissed Plaintiff's retaliation claims against Jones, Hessel, and Filighera asserted in the complaint as insufficiently pleaded.  (Dkt. 27 at 9-12).  In the amended complaint, Plaintiff reasserts the same claims and alleges additionally that Solomon retaliated against him.  These claims are insufficient to proceed to service.

As discussed in the Court's previous Screening Order, prison officials may not retaliate against prisoners for exercising their constitutional rights.  *See generally Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977).  To make out a § 1983 retaliation claim, a prisoner must present allegations that (1) he engaged in constitutionally protected speech or conduct, (2) the defendant took adverse action against him, and (3) there was a causal connection between the protected speech or conduct and the adverse action.  *Espinal*, 558 F.3d at 128.  It has been observed that prison retaliation claims are prone to abuse with respect to any decision that a prisoner may dislike.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  And because of the "near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with skepticism and particular care."  *Id.*; *accord Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) ("we are careful to require non-conclusory allegations").  Thus, in the Second Circuit, prisoner retaliation claims tend to "sift" into three categories: retaliation claims "supported by specific and detailed factual allegations[;]" claims that allege facts "giving rise to a colorable suspicion of retaliation[;]" and claims that allege retaliation "in wholly conclusory terms [and] may safely be

dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

As in the complaint, Plaintiff's allegations of retaliation against Jones, Hessel , and Filighera consist of conclusory allegations that may be safely dismissed.  Plaintiff alleges in conclusory fashion that Jones retaliated against him.  (*See, e.g.*, Dkt 28 at 8).  However, to the extent that Plaintiff alleges that cell searches were retaliatory, a cell search, even if improper, "does not constitute an adverse act in a § 1983 retaliation claim."  *Burgess v. Banasike*, No. 6:19-CV-06617 EAW, 2022 WL 13740744, at *7 (W.D.N.Y. Oct. 24, 2022).  Therefore, these facts cannot form the basis for a retaliation claim.  Plaintiff alleges that Filighera was present during a search of Plaintiff on or about April 28, 2022, "for retaliatory purposes" (*id.*), and Hessel retaliated against Plaintiff because of sexual misconduct complaints Plaintiff filed in 2019 (*id.* at 4).  Because the allegations in the amended complaint do not differ in any material way from the allegations that the Court previously found were insufficient to sustain retaliation claims, the retaliation claims against Jones, Hessel, and Filighera are dismissed with prejudice.

Plaintiff alleges that in or about September 2022, Solomon observed Plaintiff with a tablet from the law library.  (*Id.* at 16).  Solomon informed a nearby John Doe Officer Defendant that Plaintiff had a tablet and then left the gallery where Plaintiff was housed.  (*Id.*).  Plaintiff does not allege that the tablet was seized or that any harm occurred as a result of this interaction.  "Thus, the . . . amended complaint fails to allege that plaintiff suffered an actual injury as a result of not receiving tablet services."  *Bradshaw v. Marshal*, 9:21-CV-0826 (MAD/CFH), 2022 WL 3152363, at *7 (N.D.N.Y. Aug. 8, 2022); *see Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004 (("[A] plaintiff asserting First Amendment

retaliation must allege some sort of harm. . . .").  Therefore, Plaintiff has not sufficiently pleaded a claim for retaliation and this claim must be dismissed.  However, because Plaintiff had not asserted this claim in the complaint or been provided an opportunity to amend, the claim is dismissed without prejudice.

### E. Claims Against Defendants in their Official Capacities

Plaintiff's claims against Defendants in their official capacities were previously dismissed.  (Dkt. 27 at 18-19).  For the reasons stated in the Court's previous order, the Eleventh Amendment bars Plaintiff's suit against any individual Defendants newly named in their official capacities.  To the extent that such claims have been made in the amended complaint, any such claims are dismissed without prejudice as barred by the Eleventh Amendment.

## IV.    Motion Pursuant to Federal Rule of Civil Procedure 64

Despite the Court's denial of Plaintiff's previous motion brought under Federal Rule 64 and its admonition that a second such motion should be filed only "[i]f this action proceeds past screening, and thereafter a reason arises to invoke a state law remedy to secure satisfaction of the potential judgment" (Dkt. 27 at 20), Plaintiff has filed a second Rule 64 motion requesting Filighera's arrest, attachment of all the Defendants' paychecks, and an order that the Defendants be locked out of Collins to prevent them from speaking with each other about the case until Plaintiff can question all potential witnesses (Dkt. 30).  For the reasons stated in the Court's Decision and Order entered on January 30, 2023, this motion is denied as premature.

## V.      Motion for Discovery

Plaintiff has also filed two motions for discovery.  (Dkt. 31; Dkt. 34).  There has been no appearance of any Defendant in this matter, *see* Fed. R. Civ. P. 12(a); and there has been no initial scheduling conference among the parties, *see* Fed. R. Civ. P. 26(d)(1); L. R. Civ. P. 26, which does not occur until after service is completed and an answer is filed and served.   Accordingly, Plaintiff's motions for discovery are denied without prejudice as premature.  Plaintiff is cautioned that any further motions for discovery filed prior to the initial scheduling conference may be summarily denied.

## VI.     Motion to Appoint Counsel

Plaintiff has filed a third motion for assignment of counsel.  (Dkt. 34).  The motion is denied without prejudice as premature for the reasons set forth in the Court's Decision and Order issued on January 30, 2023, and its Text Order issued on March 30, 2023. Plaintiff is cautioned that any further motions for appointment of counsel filed prior to the filing of an answer may be summarily denied.

## VII.    *Valentin* Request

Although Plaintiff has named several John Doe corrections officers as defendants using the moniker "Officer John Doe #1-25" for each officer, several of the incidents described in the complaint are insufficient to state a claim upon which relief can be granted.  First, Plaintiff has not stated a claim against the John Doe Officer Defendant who, upon Plaintiff's return to Collins stated, "[you're] back[,] this is going to be fun" based on this conduct.  (Dkt. 38 at 4).  Second, Plaintiff alleges that in or about August 2022, two John Doe corrections officers, both of whom Plaintiff identifies as "Officer John Doe # 1-25[,]" escorted Plaintiff from his cell.  (*Id.* at 15).  In this interaction, one officer inquired

as to events taking place between Plaintiff and Jones.  (*Id.*).  The second officer dismissed Plaintiff's efforts at deterring the officer or at succeeding in a lawsuit.  (*Id.*).  These facts alone do not state a claim upon which relief can be granted.  Finally, Plaintiff has not stated a claim upon which relief may be granted based on the conduct that Solomon told a John Doe Officer Defendant, in or about September 2022, that Plaintiff possessed a tablet.

Plaintiff has only plausibly alleged facts against Lt. Doe and the John Doe Officer Defendants who on or about April 28, 2022, allegedly participated in employing force against defendant and sexually assaulting him ("Sexual Assault John Doe Defendants").

Thus, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), the Court requests that within **30 days of entry of this Order**, the New York State Attorney General's Office ascertain the full names of Lt. Doe and the Sexual Assault John Doe Defendants and where these Defendants can currently be served.  The Attorney General's Office need not undertake to defend or indemnify these individuals at this juncture.  This request merely provides a means by which Plaintiff may name and properly serve these Defendants as instructed by the Second Circuit in *Valentin*.  Once this information is provided, the complaint shall be deemed amended to reflect the full names of these Defendants and summons shall issue and service made as directed below.

## CONCLUSION

For the reasons set forth above, Plaintiff's sexual assault and excessive force claims against Filighera, the John Doe Officer Defendants, and Lt. Doe and deliberate indifference claim against Hessel may proceed to service.  Plaintiff's New York state law claim and retaliation claim against Solomon and Plaintiff's official capacity claims are

dismissed without prejudice.  All other claims are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Plaintiff's Rule 64 motion (Dkt. 30), motions for discovery (Dkt. 31; Dkt. 34), and motion for appointment of counsel (Dkt. 34) are denied without prejudice as premature.

## ORDER

IT HEREBY IS ORDERED that Plaintiff's Rule 64 motion (Dkt. 30), motions for discovery (Dkt. 31; Dkt. 34), and motion for appointment of counsel (Dkt. 34) are denied without prejudice as premature; and it is further

ORDERED that any claims asserted against officials in their official capacities are dismissed without prejudice as barred by the Eleventh Amendment; and it is further

ORDERED that Plaintiff's sexual assault and excessive force claims against Filighera, the Sexual Assault John Doe Defendants, and Lt. Doe and deliberate indifference claim against Hessel may proceed to service; and it is further

ORDERED that Plaintiff's state law claim and retaliation claim against Solomon are dismissed without prejudice; and it is further

ORDERED that all other claims are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); and it is further

ORDERED the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the summons, amended complaint, and this order upon the Sexual Assault John Doe Defendants and Lt. John Doe, once identified, and Hessel and Filighera without Plaintiff's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and it is further

ORDERED that the Clerk of Court is directed to forward a copy of the amended complaint and this order by email to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office, at Ted.OBrien@ag.ny.gov; and it is further

ORDERED that pursuant to 42 U.S.C. § 1997(e)(g)(2) Defendants are directed to answer the amended complaint upon service;

ORDERED that Plaintiff shall notify the Court in writing if his address changes. The Court may dismiss the action if Plaintiff fails to do so.

SO ORDERED.

_____
Elizabeth A. Wolford
Chief Judge
United States District Court

DATED:      May 17, 2023
            Rochester, New York