UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BYRON SANTOS,

              Plaintiff,           **DECISION AND ORDER**

    v.

                                        6:22-CV-06338 EAW

SERGEANT D. FILIGHERA, et al.,

              Defendants.
_____

## INTRODUCTION

Proceeding *pro se*, plaintiff Byron Santos ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 asserting claims that arose while he was incarcerated at Collins Correctional Facility ("Collins"). (Dkt. 1). Presently before the Court is a motion for summary judgment in lieu of answer filed by defendants Sergeant Filighera ("Defendant Filighera"), Sergeant Hessel ("Defendant Hessel"), and CO Dustin Warren ("Defendant Warren") (collectively "Defendants") (Dkt. 57; Dkt. 60). For the following reasons, Defendants' motion is denied without prejudice to renew upon completion of discovery.

## BACKGROUND

The following facts are taken from Defendants' Rule 56 Statement (Dkt. 57-1) and exhibits submitted in support of their motion, Plaintiff's amended complaint (Dkt. 28), and Plaintiff's response to Defendants' motion (Dkt. 66). The Western District of New York Local Rules of Civil Procedure require that a party moving for summary judgment file a Statement of Undisputed Facts accompanied by citations to admissible evidence or to

evidence that can be presented in admissible form at trial.  See L. R. Civ. P. 56(a)(1).  The rule also requires a party opposing summary judgment to file a statement admitting or contesting the moving party's Statement of Undisputed Facts and provides that an opposing party's failure to do so may render the moving party's Statement of Undisputed Facts admitted.  L. R. Civ. P. 56(a)(2).  Defendants filed the required statement (Dkt. 57-1) but Plaintiff failed to submit an opposing statement, and therefore the Court could deem Defendants' recitation of the material facts admitted by Plaintiff to the extent they are supported by the record.  Nonetheless, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules . . . [, and] it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file [a Local Civil Rule 56(a)(1)] statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotations and citations omitted).  Considering Plaintiff's *pro se* status, the Court in its discretion has conducted an independent review of the record to ascertain whether disputes of material fact exist that would preclude summary judgment in favor of Defendants.  *See Daley v. Cablevision Sys. Corp.*, No. 12-cv-6316, 2016 WL 880203, at *1 (S.D.N.Y. Mar. 7, 2016).

      Plaintiff was housed at Collins in 2022.  The incidents giving rise to his claims occurred on April 28, 2022, and April 29, 2022.  Specifically, Plaintiff alleges in his amended complaint that at approximately 3:00 p.m. on April 28, 2022, he was subjected to the fifth search of his cell in less than a month.  (Dkt. 28 at 8).  The search was conducted by Defendant Filighera and two other corrections officers whom Plaintiff identifies as "(2) Defend[a]nts Officer John Doe[.]"  (*Id*.). In addition to being handcuffed and pat-frisked,

Plaintiff was scanned with a handheld metal detector. (*Id.*). The metal detector sounded in the course of the search, and Plaintiff became distressed and asked for mental health assistance. (*Id.*). Even though a John Doe officer stated that the handcuffs—holding Plaintiff's hands behind his back—were setting off the device, Defendant Filighera summoned other John Doe Officer Defendants and ordered them to drop Plaintiff to the floor. (*Id.*). The John Doe Officer Defendants grabbed Plaintiff by his hair and neck, put him in a headlock, slammed him to the floor—where he hit his head—kicked him, and placed a knee on the back of his neck. (*Id.* at 9). The John Doe Officer Defendants shackled Plaintiff's legs and he was carried to the first-floor bull pen and thrown on the floor. (*Id.*). Defendant Filighera asked Plaintiff if he was going to comply with a strip frisk. (*Id.*). Plaintiff requested medical attention and mental health assistance and told Defendant Filighera that he would "be damned if I give ya the satisfaction to jump me naked." (*Id.*).

At approximately 3:30 p.m., Plaintiff alleges that a nurse arrived and asked Plaintiff if he was okay. (*Id.*). Plaintiff responded that he was not okay, that he needed medical attention, but before he received care, he wanted to see the patient bill of rights. (*Id.*). The nurse left, ostensibly to get a copy of the patient bill of rights. (*Id.*). When she returned approximately one-half hour later, she did not have a hardcopy but said she could verbally tell him what his rights were. (*Id.* at 9-10). When Plaintiff again asked both for medical care and a copy of the patient bill of rights, the nurse looked at Filighera, who said "don't give him the patient bill of rights." (*Id.* at 10).

Plaintiff contends that at approximately 4:30 p.m., Lt. Doe arrived at the bull pen and spoke briefly with Defendant Filighera. (*Id.*). Lt. Doe then asked Plaintiff what

happened. (*Id.*). Plaintiff told Lt. Doe that he had been assaulted while in restraints, he had not received medical attention, and mental health had not yet been to see him. (*Id.*). Plaintiff then said to Lt. Doe that five cell searches in less than a month must be illegal, especially when there was no reason to conduct the searches. (*Id.*). Plaintiff asked to speak to the chaplain. (*Id.*). Lt. Doe left the area for approximately twenty minutes. (*Id.*). When he returned, Plaintiff told him that he had still not received medical care or mental health assistance, nor had he seen the chaplain. (*Id.*). Plaintiff then commented, "you guys are corrupt as fuck." (*Id.*).

Plaintiff alleges that he then observed John Doe Officer Defendants dressed in black and wearing gas masks, and Plaintiff turned his back against the bull pen door, raised his hands, and started screaming that he was not resisting. (*Id.*). The John Doe Officer Defendants sprayed Plaintiff four or five times with "bear spray," hit him with a shield, and knocked him to the floor. (*Id.* at 10-11). The John Doe Officer Defendants handcuffed Plaintiff's hands behind his back, pinned him on his stomach by kneeling on his arms and "stomping" on his ankles, stripped him naked and ripped his religious beads off, spread his buttocks, and inserted a finger inside his rectum. (*Id.* at 11). When the John Doe Officer Defendants finished, they carried him back to his cell and put him on contraband watch as a way to torture him. (*Id.*).

At approximately 5:30 p.m., Plaintiff asked the inmate in the cell next to his to call Plaintiff's girlfriend. (*Id.*). Plaintiff asked the inmate to explain to Plaintiff's girlfriend that DOCCS employees were trying to kill him, that they had not given him medical attention or documented his injuries, and that he was feeling suicidal. (*Id.*). At

approximately 6:00 p.m., Plaintiff told the contraband watch officer that he was feeling suicidal; the officer responded that "Filighera already knew." (*Id.*).

Plaintiff alleges that at approximately 6:30 p.m. Plaintiff heard Defendant Filighera call for Plaintiff's cell door to be opened. (*Id.*). Plaintiff alleges that when the door opened, Defendant Filighera ordered the John Doe Officer Defendants to assault Plaintiff. (*Id.* at 11-12). Plaintiff tried to run to the back of the cell but was slammed to the floor. (*Id.* at 12). Plaintiff screamed and cried for help while the John Doe Officer Defendants cuffed his hands behind his back, punched, kicked, and stomped him and again inserted a finger inside his rectum. (*Id.*). The next day, while still on contraband watch, Plaintiff asked Defendant Hessel for medical attention and Defendant Hessel responded, "you can fucking die[;] don't ask me for anything." (*Id.*).

DOCCS records reflect that on April 29, 2022, Plaintiff reported a Prison Rape Elimination Act ("PREA") allegation to an Office of Mental Health social worker. (Dkt. 57-3 at 33). In his report, he did not identify who allegedly "stuck their finger up my ass two times," but accepted an interview with OMH staff. (*Id.*). On May 1, 2022, Plaintiff documented his PREA complaint in writing via a letter to the Superintendent. (Dkt. 57-3 at 32). In it, he stated that on April 28, 2022, he was raped two times by Collins corrections officers. (*Id.*). In the letter to the Superintendent, he states, "I would like to file a complaint but I fear for my life. I do not know where to go from here or what is the next step but for now I am reporting this with you the PREA Supervisor and my Private Attorney until further notice." (*Id.*).

Defendants note that Plaintiff has filed multiple other grievances and is familiar with the grievance process. (Dkt. 57-1 at ¶ 3). Defendants allege that Plaintiff did not exhaust a grievance about, or mention in his PREA complaint, any allegations relating to excessive force or denial of medical care. (*Id.* at ¶ 4).

## PROCEDURAL HISTORY

Plaintiff filed his complaint on August 12, 2022. (Dkt. 1). The Court issued a screening order on January 30, 2023, granting Plaintiff's motion to proceed *in forma pauperis*, terminating certain claims and defendants, and granting Plaintiff an opportunity to file an amended complaint. (Dkt. 27).

Plaintiff filed an amended complaint (Dkt. 28) on February 21, 2023, and the Court issued a second screening order on May 17, 2023, which permitted Plaintiff's claims for sexual assault and excessive force against Defendant Filighera and John Doe Defendants, and his claim for deliberate indifference against Defendant Hessel, to proceed to service (Dkt. 37).

On September 26, 2023, Defendant Hessel filed the instant motion for summary judgment in lieu of answer. (Dkt. 57). On September 28, 2023, Defendant Filighera and Defenant Warren requested to join in the relief requested by Defendant Hessel (Dkt. 59), which was granted by the Court (Dkt. 60). In their motion for summary judgment, Defendants contend that Plaintiff has failed to exhaust his administrative remedies with respect to most of his claims. Plaintiff moved for (Dkt. 62; Dkt. 64) and was granted extensions of time to respond to the motion (Dkt. 63; Dkt. 65). On January 26, 2024,

Plaintiff filed his opposition to the motion for summary judgment. (Dkt. 66). On February 7, 2024, Defendants filed their reply. (Dkt. 67).

## DISCUSSION

### I. Legal Standard for Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d

Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after discovery has occurred—the moving party must demonstrate that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. *See Anderson*, 337 F.3d at 206.  "Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a metaphysical doubt concerning the facts, or on the basis of conjecture or surmise." *Beckford v. New York State Off. of Mental Health*, No. 06-CV-00561(SR), 2010 WL 1816689, at *5 (W.D.N.Y. May 3, 2010) (quotation omitted).  An inmate's failure to exhaust administrative remedies may properly be considered on a motion for summary judgment made in lieu of an answer. *See Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting summary judgment motion made in lieu of answer where inmate failed to file grievances/appeals).

"Where one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them 'to raise the strongest arguments that they suggest.'" *Thorne v. Lewis*, No. 3:19CV24(VLB), 2021 WL 4324475, at *2 (D. Conn. Sept. 23, 2021)

(quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015)).  Despite this liberal approach, allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II. Exhaustion of Administrative Remedies

Defendants argue that they are entitled to summary judgment on Plaintiff's claims relating to the use of chemical agents, physical assault, and deliberate indifference to medical needs, arguing that Plaintiff failed to exhaust his administrative remedies with respect to those claims.  Defendants rely on facility records to characterize the April 28, 2022[1] incidents alleged in Plaintiff's amended complaint as three separate incidents: a first at 3:40 p.m. when Plaintiff refused to comply with a strip frisk directive requiring the use of force; a second incident at approximately 6:20 p.m., when chemical agents were employed to forcibly place Plaintiff in mechanical restraints in order to perform a strip frisk before transfer to a contraband watch cell; and a third incident at approximately 8:40 p.m., when Plaintiff did not respond to staff direction, began punching a corrections officer, and force was necessary to gain his compliance.  Defendants acknowledge that Plaintiff's PREA complaint references that he was "raped twice" by Collins staff and accordingly, as to Plaintiff's sexual assault claim, which they characterize as the second incident occurring at 6:20 p.m., there exist issues of fact regarding exhaustion.  But as to all other claims,

---

[1] In several instances in their brief, Defendants mistakenly refer to the incidents alleged in Plaintiff's amended complaint as having occurred on May 28, 2022, rather than April 28, 2022.  (*See, e.g.,* Dkt. 57-4 at 5, 8).  The Court presumes this is simply an inadvertent error and that the date of the incidents in question is not at issue.

Defendants contend that a failure to properly exhaust warrants summary judgment in their favor. Following a discussion of the appropriate standards, the Court will consider Defendants' arguments.

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, the evidence must demonstrate the "proper exhaustion of administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Garraway v. Smith*, No. 12-CV-924S, 2020 WL 491328, at *3 (W.D.N.Y. Jan. 30, 2020) (plaintiff "must fully complete the administrative review process before commencing [an] action."). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. 199, 218 (2007). As such, "[t]he exhaustion inquiry . . . requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011).

Further, "[f]ailure to exhaust administrative remedies is an affirmative defense . . . and when raised as a basis for summary judgment, the defendant 'bears the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute.'" *Deleon v. Ayers*, No. 16-CV-6848L, 2023 WL 171889, at *2 (W.D.N.Y. Jan. 12, 2023) (quoting *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)).

In New York, proper exhaustion entails going through a three-step appeal procedure set out in 7 N.Y.C.C.R. § 701.5. *Garraway*, 2020 WL 491328, at *4. This section provides that:

> (1) the inmate must submit a written complaint to the Grievance Clerk within 21 calendar days of the alleged occurrence; the Grievance Clerk then submits the complaint to the Inmate Grievance Resolution Committee ("IGRC") for investigation and review; (2) if the IGRC denies the grievance, the inmate may appeal to the superintendent of the facility by filing an appeal with the [Grievance Clerk]; (3) after the superintendent issues a decision, the inmate may appeal to the Central Office Review Committee ("CORC"), which makes the final administrative determination.

*Id*. An inmate may only seek relief under § 1983 "[i]f all three levels of review are exhausted." *Id*.

An exception from the exhaustion requirement exists where the grievance process is unavailable. As explained by the Court of Appeals for the Second Circuit:

> First, an administrative remedy may be unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking

advantage of a grievance process through machination, misrepresentation, or intimidation."

*Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)).

In addition, pertinent here, complaints arising under the PREA apply a different procedure. *Burrell v. Durkin*, No. 9:22-CV-102 (BKS/ML), 2024 WL 1327048, at *6 (N.D.N.Y. Mar. 28, 2024); *Akinlawon v. Polonco*, No. 21-CV-2621 (KMK), 2023 WL 6216724, at *13 (S.D.N.Y. Sept. 25, 2023) ("Notwithstanding the PLRA and DOCC[S]'s general framework, 'for complaints regarding sexual abuse or harassment, DOCCS has established a different procedure.'" (quoting *Sheffer v. Fleury*, No. 18-CV-1180, 2019 WL 4463672, at *4 (N.D.N.Y. Sept. 18, 2019) (citing DOCCS Directive 4040 § 701.3(i); 7 N.Y.C.R.R. § 701.3(i))). "Indeed, '7 N.Y.C.R.R. § 701.3 creates a relaxed exhaustion requirement for allegations concerning incidents of sexual assault.'" *Burrell*, 2024 WL 1327048 at * 6. (quoting *Haywood v. Annucci*, No. 18-cv-10913, 2022 WL 4357648, at *7 (S.D.N.Y. Sept. 20, 2022)). Specifically, 7 N.Y.C.R.R. § 701.3(i) provides:

> [A]ny allegation concerning an incident of sexual abuse or sexual harassment shall be deemed exhausted if official documentation confirms that: [ ] an inmate who alleges being the victim of sexual abuse or sexual harassment reported the incident to facility staff; in writing to Central Office Staff; to any outside agency that the Department has identified as having agreed to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials under the PREA Standards; or to the Department's Office of the Inspector General[.]

7 N.Y.C.R.R. § 701.3(i).

Non-sexual acts intertwined with or occurring in furtherance of the sexual abuse have been held to be encompassed by the lower standard set forth for PREA claims.

*Akinlawon*, 2023 WL 6216724, at *14.  The court in *Akinlawon* explained the reasoning for permitting non-sexual acts intertwined with the sexual harassment or abuse to be entitled to the lower standard:

> First, the regulation provides that the relaxed standard governs "any allegation concerning an incident of sexual abuse or sexual harassment." 7 N.Y.C.R.R. § 701.3(i) (emphasis added).  Non-sexual acts done to enable, further, or magnify the sexual misconduct, obviously, "concern[ ]" that misconduct, thereby falling under this standard.  Second, forcing an inmate to file separate grievances for actions that occurred simultaneously and in concert with one another would have the adverse effect of forcing an inmate to determine whether such related assaults were "sufficient under PREA prior to relying upon the language in Directive 4040[,]" and such an implied requirement would be "untenable." . . . District courts confronted with this question have concluded that any non-sexual act "intertwined" with sexual abuse is subject to the relaxed grievance standards.  *See, e.g., Clark v. Gardner*, No. 17-CV-366, 2021 WL 1200328, at *27 (N.D.N.Y. Mar. 8, 2021) (quoting *Sheffer* and reaching the same conclusion), *report and recommendation adopted*, 2021 WL 1198199 (N.D.N.Y. Mar. 30, 2021); *see also Sheffer*, 2019 WL 3891143, at *5 (holding that the lesser PREA grievance standard governs the reporting of "other events which are necessarily intertwined with [sexual misconduct], such as a physical assault during the course of the abuse; the failure of correctional staff to intervene to stop the rape; or acts or failures to act making a jail official legally accountable for the sexual abuse"), *report and recommendation adopted*, 2019 WL 4463672, at *6 (N.D.N.Y. Sept. 18, 2019) (considering events that are "necessarily intertwined with the underlying sexual assault" to be subject to the "relaxed exhaustion requirement").  Thus, all non-sexual misconduct "intertwined" with any allegations of sexual assault should be considered as covered by the lenient exhaustion requirements.

*Id*. at *14; *see also Blanford v. Banks,* No. 921CV231(TJM/CFH), 2023 WL 11016348, at *7 (N.D.N.Y. Aug. 28, 2023) ("Based on the foregoing, the undersigned concludes that the allegations surrounding the excessive force, failure to intervene, and sexual abuse claims are 'intertwined' for purposes of exhaustion."), *report and recommendation adopted,* 2024 WL 1558476 (N.D.N.Y. Apr. 10, 2024).

In support of their argument that Plaintiff failed to exhaust his administrative remedies, Defendants attach unusual incident reports from April 28, 2022; a copy of Plaintiff's exhausted grievance list; a copy of the grievance file for a grievance filed by Plaintiff on September 2, 2022; Plaintiff's PREA complaint and related documents; and certifications from DOCCS that the documents provided are made and maintained in the regular course of business. (Dkt. 57-3 at 37).[2]

Importantly, Plaintiff disputes Defendant's contention that he failed to exhaust his administrative remedies, stating in an affidavit to the Court that he "made several complaints that weren't being filed by the grievance office." (Dkt. 66-4 at 10). While "[c]ourts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement," *Scott v. Kastner-Smith*, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018) (citations and internal quotation marks omitted); *Engles v. Jones*, No. 6:13-CV-6461 (EAW), 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) ("[The p]laintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact."), here, Plaintiff has not had the benefit of any discovery. Thus, at this stage of the

---

[2] The Court has cautioned defense counsel's office previously about the need to submit documents in support of summary judgment in proper admissible form. *See Allah v. Latona*, 540 F. Supp. 3d 325, 330 n.2 (W.D.N.Y. 2021). Although counsel has included certifications purporting to comply with the requirements of Federal Rule of Evidence 902(11) (Dkt. 57-3 at 37-38), those certifications reference "attached" documents and yet there are no documents attached to the certifications—which are contained as a standalone exhibit to counsel's declaration. It would appear that defense counsel expects the Court to decipher which certifications apply to which exhibits. This is not the proper method for presenting a Rule 902(11) certification to the Court. A similar approach in the future may result in a summary denial of the motion.

proceedings, Plaintiff's sworn statement that he made complaints that were not filed by the grievance office raises issues of fact that warrant further investigation and are not resolvable by the Court at this time. *See Johnson v. Mason*, No. 922CV00590(MAD/CFH), 2023 WL 10365204, at *9 (N.D.N.Y. Dec. 27, 2023) (denying pre-discovery motion for summary judgment on exhaustion where issues of fact existed as to whether plaintiff filed a grievance that was lost or destroyed), *report and recommendation adopted*, 2024 WL 396679 (N.D.N.Y. Feb. 2, 2024); *Thaxton v. Simmons*, No. 10-CV-1318 (MAD/RFT), 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether Plaintiff never filed his initial grievance . . . as Defendants claim, or that, as Plaintiff claims, he filed a timely grievance that was lost or tampered with by Defendants. Such credibility assessments are to be resolved by a trier of fact.").

Moreover, as noted, where a grievance process is unavailable to an inmate because prison officials thwart his efforts due to intimidation, an exception to the exhaustion requirement is presented. Specifically, an administrative remedy may be considered unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates" or when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Booker v. Flint*, No. 922CV600(GTS/ATB), 2023 WL 3765556, at *3 (N.D.N.Y. Apr. 11, 2023) (citing *Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016)), *report and recommendation adopted*, 2023 WL 3762822 (N.D.N.Y. June 1, 2023). Here, in his PREA complaint to the Superintendent written within days of the incident, Plaintiff expressly states, "I would like to file a complaint but I fear for my

life." (Dkt. 57-3 at 32). While not conclusive as to whether the exception to exhaustion may ultimately be applicable, at the very least, this statement raises an issue of fact upon which further discovery is appropriate. "Indeed, '[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.'" *Irving v. Philips*, No. 15-CV-6413-FPG, 2017 WL 85427, at *1 (W.D.N.Y. Jan. 10, 2017) (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)); *see also Booker*, 2023 WL 3765556, at *4 (denying summary judgment in lieu of answer on question of exhaustion where plaintiff alleged that defendant specifically advised him that any attempt to file a grievance would result in retaliation); *Murray v. Noeth*, No. 6:19-CV-6342 (EAW), 2022 WL 4467691, at *5 (W.D.N.Y. Sept. 26, 2022) ("[A]t this stage of the proceedings and with no discovery having been conducted, it would not be appropriate to resolve this issue [of whether plaintiff was entitled to exception for exhaustion] just based on the papers.").

Finally, as set forth above, non-sexual acts that are intertwined with, or conducted in connection with or in furtherance of sexual harassment or abuse, are entitled to the relaxed exhaustion requirement set forth in the PREA. While Defendants characterize Plaintiff's claims as consisting of three wholly separate incidents, Plaintiff contends that the allegations are all part of a continuous violation of sexual harassment and abuse, that included a finger being shoved into his anus twice on April 28, 2022, once at approximately 4:50 p.m. and again at 6:30 p.m. (Dkt. 28 at 11, 12). To the extent that Defendants contend that facility documents indicate otherwise, such disputes should be appropriately explored during discovery. For purposes of a pre-discovery summary judgment motion, the Court

is unable to resolve these questions as a matter of law. *See Johnson v. Brown*, No. 9:20-CV-622 (LEK/ATB), 2022 WL 7288498, at *10 (N.D.N.Y. May 12, 2022) (internal citation omitted) ("Aside from the error in the date, defendants argue that the physical assault claim is not exhausted because it was not mentioned in the OSI claim and it was never separately exhausted through the grievance procedure. However, plaintiff claims that the physical assault happened immediately before the sexual assault, and was part of the same incident even though it was not raised specifically with OSI. While investigating the alleged sexual assault, the investigator would necessarily examine the facts surrounding the incident. For purposes of exhaustion, this court finds that plaintiff gave defendants the opportunity to investigate the allegations. The court will not separate the physical from the sexual assault because plaintiff alleges that both were part of the same incident."), *report and recommendation adopted*, 2022 WL 4395995 (N.D.N.Y. Sept. 23, 2022). Like the other exhaustion issues set forth herein, discovery is appropriate.

For all of these reasons, the Court concludes that it is unable to decide as a matter of law that Plaintiff has failed to adequately exhaust his administrative remedies. Defendants' motion for summary judgment in lieu of answer on this basis is accordingly denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment in lieu of answer (Dkt. 57) is denied without prejudice to renewal upon completion of discovery.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   May 9, 2024
         Rochester, New York